**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:<br><br>MELANIE R. BLACKSTOCK,<br><br>        Debtor. | Chapter 7<br>Case No. 19-11590-JEB |
| AMERICAN BANK AND TRUST COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>MELANIE R. BLACKSTOCK,<br><br>        Defendant. | Adversary Proceeding<br>No. 20-01123-JEB |

**MEMORANDUM OF DECISION**

American Bank and Trust Company ("ABT") commenced this adversary proceeding, against the debtor, Melanie R. Blackstock, seeking an order revoking her discharge under Section 727(d)(1) of the Bankruptcy Code. This matter came before the Court on the Motion of Defendant Melanie R. Blackstock for Summary Judgment ("Motion"). Pursuant to the Motion, Dr. Blackstock asserts that she is entitled to judgment as a matter of law. For the reasons set forth in this Memorandum, the Court will grant the Motion in part and deny the Motion in part by separate order.

    **Background**

The background reflects the facts relevant to this decision drawn from the record that are undisputed, except as otherwise noted.

Prior to the bankruptcy, Dr. Blackstock ran a medical practice in Oklahoma through a corporation, Melanie Russell Blackstock, MD, Inc. ("MD Company"). ABT advanced funds to MD Company, secured by the assets of the company and guaranteed by Dr. Blackstock. In connection with the loan from ABT, Dr. Blackstock gave ABT a personal financial statement dated March 9, 2018. In April 2018, Dr. Blackstock ceased operating MD Company and moved from Oklahoma to Massachusetts.

More than a year later, on May 9, 2019, Dr. Blackstock filed her bankruptcy petition under Chapter 7 of the Code, together with her initial schedules of assets and liabilities and statement of financial affairs. Notice of the initial Section 341 meeting scheduled for June 18, 2019, and the deadline of August 19, 2019, to object to discharge was sent to all creditors, including ABT. When the initial meeting was rescheduled, notice was given to ABT and the other creditors. After the initial Section 341 meeting was held, John Aquino, the Chapter 7 trustee, held two further continued Section 341 meetings in August 2019 and September 2019. Dr. Blackstock appeared and testified at the three Section 341 meetings. ABT did not attend any of the meetings.

Prior to the deadline, the Trustee obtained an extension to October 11, 2019, to file a complaint objecting to discharge. No other party filed a complaint objecting to discharge before the deadline or sought an extension of the deadline. After the Trustee did not object to Dr. Blackstock's discharge, Dr. Blackstock was granted a discharge on October 17, 2019.

Since the Trustee determined that there may be potential assets, at his request, the Court set a deadline for filing proofs of claim. ABT timely filed a proof of claim in November 2019.

In July 2020, ABT filed a motion under Bankruptcy Rule 2004 to examine Dr. Blackstock under oath and subpoena documents. After the motion was granted by the Court, but

before the Rule 2004 examination was held, Dr. Blackstock filed a motion to amend her Schedules and Statement regarding certain jewelry. In the amended Statement and Schedules, Dr. Blackstock stated that she found certain jewelry she originally certified had been lost or stolen and included the jewelry on her list of assets. She also disclosed that the jewelry was being delivered to the Trustee. ABT conducted the Rule 2004 examination of Dr. Blackstock in September 2020.

On October 16, 2020, ABT filed the Complaint in this adversary proceeding, seeking to revoke Dr. Blackstock's discharge under Section 727(d)(1) on the grounds that she obtained the discharge through fraud. In the Complaint, ABT asserted that Dr. Blackstock knowingly and fraudulently made false oaths in her Schedules and Statement, and that ABT did not know of the fraud until after the discharge was granted. In particular, ABT alleged that Dr. Blackstock knowingly and fraudulently (i) failed to disclose an agreement between her personally and Dr. Trent Fogleman to share profits from the operation of two lasers previously owned by Dr. Blackstock or MD Company; (ii) misrepresented the income and expenses of her household and her husband; and (iii) misrepresented facts about certain jewelry. After the Court denied her motion to dismiss the Complaint, Dr. Blackstock filed an answer denying the claims of ABT.

Dr. Blackstock contends that based on the undisputed facts (i) she did not commit fraud in obtaining her discharge; (ii) any alleged false statements were not material; and (iii) even if any alleged fraud could be found, ABT was on notice of facts regarding potential fraud before the grant of the discharge but failed to investigate. ABT opposed the Motion arguing that the undisputed facts show that ABT did not have knowledge of any alleged bankruptcy fraud by Dr. Blackstock prior to the grant of the discharge. In addition, ABT argues that it is entitled to summary judgment or partial summary judgment as a matter of law based on the undisputed

3

facts. ABT argues that based on the undisputed facts (i) Dr. Blackstock admitted that statements on the Schedules and Statement were false; (ii) Dr. Blackstock failed to offer any evidence to show that the statements were not made knowingly and fraudulently; and (iii) ABT did not have knowledge of the alleged false oaths until after the discharge was granted.

**Summary Judgment Standard**

Summary judgment must be granted when the moving party demonstrates that there is no genuinely disputed material fact and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) made applicable by Fed. R. Bankr. P. 7056; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). To support the motion, the moving party can cite specific parts of the record or identify the nonmoving party's evidentiary shortcomings. Fed. R. Civ. P. 56(c). For example, the moving party can show that the nonmoving party lacks sufficient admissible evidence to meet its burden of proof at trial. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

Once the moving party makes such a showing, the burden shifts to the party opposing summary judgment to establish that there is a genuine issue of material fact with respect to an essential element of the claim or defenses. *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir. 1989). A material fact is one that will affect the outcome of trial under the substantive law. *Anderson*, 477 U.S. at 248. A dispute is genuine if there is sufficient evidence to support a finding for the nonmoving party at trial. *Id.* If the nonmoving party bears the ultimate burden of proof at trial, the nonmoving party must show "definite, competent evidence" in response to the motion for summary judgment. *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991).

In determining whether summary judgment must be granted, the court does not weigh evidence. *Anderson*, 477 U.S. at 249. The court must view the evidence in the light most

4

favorable to the nonmoving party, drawing all reasonable inferences in favor of such party. *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). If parties have had notice and a reasonable time to respond, the Court may also consider whether to grant summary judgment independent of the motion, including in favor of the nonmoving party. Fed. R. Civ. P. 56(f)(1).

**Analysis**

As more fully set forth below, the Court concludes that Dr. Blackstock is entitled to summary judgment to the extent that revocation of her discharge is sought on the alleged false oaths regarding her jewelry and her household income and expenses. The undisputed facts show that, prior to the granting of the discharge, ABT had information to put it on notice of possible misrepresentations and failed to diligently investigate. With respect to the agreement with Dr. Fogleman, the Court concludes that there are genuinely disputed material facts that preclude judgment for either party.

One of the principal purposes of bankruptcy is to afford a debtor a fresh start with a discharge of their debt. *Bartenwerfer v. Buckley*, 143 S. Ct. 665, 670 (2023). Section 727 sets forth several grounds on which a creditor may object to the grant of a discharge. 11 U.S.C. § 727. But the Bankruptcy Rules set firm deadlines on when a complaint objecting to discharge must be filed. *See* Fed. R. Bankr. P. 4004. A creditor must file a motion and demonstrate good cause to obtain an extension of the deadline to object to discharge. *Id.*

Once a discharge is granted, revocation of the discharge is an extreme remedy. *In re Gillis*, 403 B.R. 137, 144 (B.A.P. 1st Cir. 2009). Section 727(d) provides for revocation of a discharge only on certain grounds. 11 U.S.C. § 727(d). Under Section 727(d)(1), a creditor may seek the revocation of a discharge (i) if the discharge was obtained through fraud; (ii) the creditor did not know of the fraud prior to the grant of the discharge; and (iii) the fraud would have been a basis for denial of the discharge under Section 727(a). *In re Gillis*, 403 B.R. at 144. The statute

5

is construed "liberally in favor of the debtor." *In re Habash*, 360 B.R. 775, 778 (N.D. Ill. 2007). A creditor must show not only that they did not have knowledge, but that they had no notice of facts that would suggest a potential fraud or misrepresentation. *In re Vereen*, 219 B.R. 691, 696 (Bankr. D.S.C. 1997). It is a creditor's burden to exercise appropriate diligence and investigate any potential fraud before the grant of a discharge. *Mid-Tech Consulting, Inc. v. Swendra*, 938 F.2d 885, 887-88 (8th Cir. 1991).

Applying the foregoing, the Court concludes that, based on the undisputed material facts, ABT was on notice of facts that raised questions of potential fraud regarding Dr. Blackstock's jewelry and her household income and expenses prior to the grant of the discharge. It was ABT's obligation to investigate those facts prior to the discharge. Since ABT had notice of potential fraud prior to the grant of the discharge, it cannot prevail on its claim for revocation of the discharge on these grounds.

With respect to the jewelry, ABT had a financial statement from Dr. Blackstock dated March 2018 that listed "jewelry" valued at $310,000, without listing specific items. In her initial Schedules, Dr. Blackstock listed "Miscellaneous jewelry and costume jewelry" with a significantly different value, $6,000. In her initial Statement, Dr. Blackstock stated that "Jewelry including [a] diamond pendant, pearl and diamond bracelet, wedding plates and other miscellaneous jewelry," were "lost/stolen" during her move to Massachusetts. She listed the value as unknown and stated that there was no recovery from insurance. The significant discrepancies in values between the financial statement and the Schedules are obvious. ABT noted the discrepancies as part of its request for the Rule 2004 examination. Based on the information in the initial Statement, ABT could have inquired about the circumstances regarding the asserted loss before the discharge was granted. ABT offered no evidence as to why it did not.

ABT claims that Dr. Blackstock's discovery of the "lost" jewelry after her discharge permits them now to assert that she recklessly disregarded the truth in her Statement. But Dr. Blackstock's belated "discovery" cannot reset the clock on when ABT had notice that the jewelry and other assets were missing, requiring diligent investigation by ABT.

Similarly, with respect to the allegations regarding Dr. Blackstock's household income and expenses, ABT had notice of discrepancies and the possibility of misrepresentations prior to the granting of the discharge. ABT alleges that Dr. Blackstock misrepresented her household expenses and her nonfiling spouse's income. ABT raises, however, a number of inconsistencies based on the initial Schedules filed by Dr. Blackstock. For example, ABT notes that Dr. Blackstock used Schedule J-2 to list her husband's expenses but did not indicate whether they maintained separate households. In her Schedules, Dr. Blackstock claimed that, based on the combined income and expenses, there was only $2,100 in net income a month. ABT argues that the Schedules appear to reflect that Dr. Blackstock was subsidizing her husband's expenses, while he may or may not have been maintaining a separate household. ABT claims that the Schedules misrepresent the income and expenses, based on its review of financial records obtained during the adversary proceeding. But ABT had notice of the Schedules and an opportunity to investigate the discrepancies prior to the granting of a discharge. It took no steps to do so until after the granting of the discharge. ABT has offered no evidence that it was precluded from raising those ambiguities and concerns, or from requesting the financial documents before the discharge was granted.

With respect to the agreement with Dr. Fogleman, the Court concludes that there are genuinely disputed material facts regarding the agreement and that ABT may proceed to trial on this issue. ABT asserts that Dr. Blackstock failed to disclose an agreement between her

7

personally and Dr. Fogleman regarding the sharing of profits from lasers previously used in her practice. In her Schedules, Dr. Blackstock listed MD Company, with a description of its assets, including two lasers that were being held by Dr. Fogleman. She also identified a potential claim against the lasers' manufacturer. She did not list any agreement with or potential claims against Dr. Fogleman. But in her Rule 2004 examination, Dr. Blackstock testified that she had an agreement with Dr. Fogleman to share the profits from the use of the lasers. She did not state that the agreement was between MD Company and Dr. Fogleman. She also testified that there was no written agreement with Dr. Fogleman and that she was not aware of any emails reflecting the terms of the agreement. Contrary to this testimony, in connection with the Motion, Dr. Blackstock submitted (i) an affidavit of Dr. Fogleman that asserted the agreement regarding the lasers was between MD Company and Cosmetic Surgery Center, Inc.; and (ii) a Joint Venture Agreement between the companies.

Given the foregoing, there are material issues of fact that are genuinely disputed including whether the agreement was between Dr. Fogleman and Dr. Blackstock personally, or between MD Company and Cosmetic Surgery Center. It is undisputed that Dr. Blackstock did not list any agreement with Dr. Fogleman to share the profits. The statement that the lasers were being held by Dr. Fogleman was not sufficient to put someone on notice that there may have been an undisclosed agreement that Dr. Blackstock personally would share profits. Dr. Blackstock argues that she was not required to disclose all of the agreements and assets of MD Company. While she is correct, her own testimony and evidence raise questions of whether this was an agreement with MD Company or with her personally. As a result, there are genuinely disputed material facts regarding whether Dr. Blackstock made a false oath by omitting any agreement, and, if so, whether she made the false oath knowingly and fraudulently. ABT is

8

entitled to proceed to trial on the issue of whether Dr. Blackstock intentionally and fraudulently made a false oath by failing to list a personal agreement with Dr. Fogleman.

The Court rejects the argument made by Dr. Blackstock that the failure of ABT to attend the Section 341 meetings alone renders it unable to raise any of the issues in the Complaint. ABT is correct that it is not required to attend the Section 341 meetings. With respect to the agreement with Dr. Fogleman, ABT has shown that there was nothing in the Schedules or Statement or otherwise that put ABT on notice of any potential agreement. Dr. Blackstock has not offered anything to refute that conclusion. For example, she does not identify any testimony at the Section 341 meetings that would raise any issues regarding a personal agreement on the lasers. With respect to her jewelry and her household income, it is ABT's failure to show that it undertook any investigation before the granting of the discharge, whether through the Section 341 meetings or otherwise, that is the basis to deny ABT relief on those issues.

The Court declines to exercise its discretion to grant summary judgment or partial summary judgment for ABT. Since ABT failed to show that it did not have notice to investigate the potential fraud regarding Dr. Blackstock's jewelry and her household income and expenses before the granting of the discharge, the Court need not reach the issue with respect to those matters. With respect to the agreement with Dr. Fogleman, as reflected above, there are genuinely disputed material facts, including about Dr. Blackstock's intent, that preclude the grant of summary judgment for either party.

**Conclusion**

For the foregoing reasons, the Court will grant the Motion in part and deny the Motion in part by separate order.

Dated: June 29, 2023

By the Court,

*Janet E. Bostwick*

Janet E. Bostwick
United States Bankruptcy Judge